# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0733 | **DATE** | 4/29/2002 |
| **CASE TITLE** | Onyx Acceptance Corp. vs. Lee G. Hartzol and Alfreda G. Hartzol | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Onyx Acceptance Corp.'s Appeal from the Bankruptcy Court's Confirmation of Alfreda and Lee Hartzol's Chapter 13 plan.

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the decision of the Bankruptcy Court is reversed and the case remanded to permit Onyx Acceptance Corp. to present evidence to overcome the presumptive use of the prime rate for the cramdown of its automobile loan.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 0 6 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| klb (lc) | courtroom deputy's initials | 2002 MAY -3 PM 2:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ONYX ACCEPTANCE CORP., | ) |
| --- | --- |
| | ) |
| Appellant, | ) |
| | ) No. 02 C 0733 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| LEE G. HARTZOL and ALFREDA G. HARTZOL, | ) |
| | ) |
| Appellees. | ) |

DOCKETED
MAY - 6 2002

## MEMORANDUM OPINION AND ORDER

Before this court is Onyx Acceptance Corp.'s ("Onyx") appeal from the Bankruptcy Court's confirmation of Alfreda and Lee Hartzol's Chapter 13 plan. At issue in this case is the appropriate rate of interest to be paid on secured claims in a Chapter 13 proceeding under the so-called "cram down" provision of 11 U.S.C. § 1325(a)(5)(B)(ii). Onyx appeals confirmation of the debtor's plan, asserting that the interest rate of 6.75% to be paid on its secured claims under the debtor's plan is insufficient to meet the "present value" requirement of § 1325(a)(5)(B)(ii). Onyx maintains that, in order to pay the value of the Onyx's claim over time, the plan must pay interest at the original contract rate. For the reasons set forth below, this Court reverses and remands this case for an evidentiary hearing on the interest rate to be applied.

**Factual and Procedural Background**

On August 16, 2001, Debtors, Lee G. Hartzol and Alfreda G. Hartzol ("Hartzol"), filed a Voluntary Petition for Relief under Chapter 13 of the United States Bankruptcy Code. At the same time, Hartzol filed a Chapter 13 Plan which proposed to pay Appellant Onyx a secured

-1-

claim at a rate of 6.75% over an initial term of 43 months. Onyx is a financier of "sub-prime" retail installment contracts secured by motor vehicle collateral. On October 26, 2001, Onyx filed an objection to Hartzol's plan on the grounds that the valuation included in the plan and the interest rate proposed were inadequate to provide Onyx with the indubitable equivalence of its property interest in the collateral, a 1996 Chevrolet Blazer.

On October 29, 2001, Hartzol filed an Amended Chapter 13 Plan which increased the valuation of Onyx's collateral to $8,700.00 (the retail value of the vehicle), and increased the life of the initial term of the plan to 44 months, but maintained the proposed present value interest rate of 6.75%. The Bankruptcy Court confirmed the plan over the objection of Onyx.

On November 7, 2001, Onyx filed a Motion to Reconsider Order of Confirmation and for Evidentiary Hearing. In that motion, Onyx reiterated its request for an evidentiary hearing to establish that the amount which it would be able to realize if it were to repossess and liquidate the collateral and reinvest the proceeds in the ordinary course of business exceeded that which the debtor proposed to pay over the life of the Amended Chapter 13 Plan. On December 17, 2001, the Bankruptcy Court denied the motion to reconsider and for an evidentiary hearing relying upon its decision in In re: Scott, 248 B.R. 786 (Bankr. N.D. Ill. 2000). In In re: Scott, the Bankruptcy Court determined that the prime interest rate is presumptively appropriate for the cramdown of automobile loans because it reflects the risk involved for the creditor when replacement rather than liquidation value is used to determine the value of the security under 11 U.S.C. § 506(a). Id. at 793.

**Discussion**

11 U.S.C. § 1325 permits a Chapter 13 debtor to "cram down" a proposed Chapter 13 plan over the objection of a creditor holding a secured claim only if "the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). Value of an allowed secured claim is determined by bifurcation under § 506(a) of the Code. Section 506(a) limits a creditor's "allowed secured claim" to the value of the collateral supporting the claim, and provides the creditor with an unsecured claim to the extent of any deficiency in collateral value. In Associates Commercial Corp. v. Rash, the Supreme Court held that the secured portion of the claim should reflect the "replacement value" of the collateral. 520 U.S. 953, 117 S.Ct. 1879 (1997). Thus, collateral must be valued at "the cost the debtor would incur to obtain a like asset for the same "proposed ... use." Rash, 520 U.S. at 965, 177 S.Ct. at 1886..

At issue in the case is the cramdown interest rate required to provide the present value of the allowed secured claim. In Rash, the Supreme Court alluded to the interrelationship between value, interest rate and risk but did not provide any guidance as to how the interrelationship of these factors should be resolved. 520 U.S. at 962-63, 117 S.Ct. at 1885. In Koopmans v. Farm Credit Services of Mid-America, ACA, a pre-Rash decision, the Seventh Circuit held that: (1) in a "cramdown" situation where a debtor's plan of reorganization is approved over the objection of a secured creditor, the secured creditor is entitled to the "indubitable equivalence" of its property interest; and (2) in order to provide this "indubitable equivalence" the creditor must receive a market rate of interest which it could have obtained, at the time of hypothetical foreclosure, if it had foreclosed its property interest and reinvested the proceeds in loans of duration and risk equivalent to that of a loan made to the debtor. 102 F.3d 874, 874-75 (7th Cir. 1996). See also

David G. Epstein, Don't Go and Do Something Rash About Cram Down Interest Rates, 49 Ala. L. Rev. 435, 443 (1998) (suggesting that the cram down interest rate should be based upon what the secured creditor would have earned had it been paid a cash amount equal to the value of its secured claim and reinvested that cash in a loan comparable to the terms and risks presented by the debtor's plan).

In this case, Judge Wedoff determined that the prime rate of interest is appropriate for the cramdown of automobile loans and confirmed the plan over the objection of Onyx. The prime rate is the benchmark rate banks use for their most creditworthy customers, but it still includes some compensation for the risk of non-repayment. Koopmans, 102 F.3d at 875, In re: Scott, 248 B.R. at 793. In Scott, Judge Wedoff thoroughly analyzed the competing methods for determining the interest rate in a cramdown situation, which included: (1) cost of funds (what a secured creditor would have to pay to borrow money); (2) new forced loan to the debtor (the interest rate a secured creditor would obtain if it made a new loan to the debtor); and (3) the "risk plus" formula (adding a "risk factor" interest premium to some standard measure of "risk free" lending such as a U.S. treasury bill). 248 B.R. at 790-92. Judge Wedoff then examined the Koopmans decision, which requires that the cramdown interest rate to be set so as to give the secured creditor "the indubitable equivalent of its nonbankruptcy entitlement." Id. at 792. Judge Wedoff explained that Koopmans is not entirely analogous to the situation at issue in Scott because in Koopmans, unlike Scott, the secured creditor's collateral was worth substantially more than the amount of its outstanding indebtedness and thus was not subject to strip down under § 506(a). Thus, according to Judge Wedoff, the court must account for the fact that in the case of an undersecured creditor some compensation for the risk of non-repayment is already

compensated for due to the Rash decision's requirement that value of a secured claim be measured by the replacement value of the collateral. Id. at 792. After consideration of these and other factors, Judge Wedoff determined that the prime rate of interest is presumptively appropriate for the cramdown of automobile loans. Id. at 793 (explaining that applying a rate of interest that fully reflects risk of nonpayment to a secured claim amount that already includes substantial risk protection results in a windfall for the secured creditor to the detriment of unsecured creditors).

This Court finds that the use of the prime rate for the cramdown of automobile loans is presumptively appropriate. In the run of cases, the use of the prime rate will provide the secured creditor the "indubitable equivalence." However, the bankruptcy court must give the secured creditor or the debtor, whichever the case may be, the opportunity to rebut the presumption. In Scott, the stipulated evidence demonstrated that the debtor's plan would pay the secured creditor more than what Koopmans would require. Unlike in Scott, however, there was no stipulation in this case regarding the amounts that Onyx would receive and earn in a liquidation. Onyx is entitled to present evidence to overcome the presumption that the prime rate is appropriate in this case.

## Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court is reversed and the case remanded to permit Onyx to present evidence to overcome the presumptive use of the prime rate for the cramdown of its automobile loan.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: April 29, 2002